PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASON M. FISHER, | CASE NO. 5:09CV1649 |
| Plaintiff, | |
| | JUDGE GWIN |
| v. | |
| | MAGISTRATE JUDGE PEARSON |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Jason M. Fisher sought judicial review of the Social Security Administration's final decision denying his application for Disability Insurance Benefits and Supplemental Security Income (collectively "benefits").

For the reasons provided below, the undersigned recommends that the Social Security Administration's decision denying benefits to Jason M. Fisher be affirmed.

**I . Overview**

Fisher was born on October 17, 1978, and was 29 years old at the time of the hearing before Administrative Law Judge ("ALJ") Elliot Bunce. Fisher finished 12th grade and is considered to have a "high school education." ECF No. 12 at 3.  Fisher's past employment includes: grocery store service clerk, convenience store stocker, dishwasher, and gas station attendant. ECF No. 12 at 3.

The ALJ found that although Fisher suffers from the following severe impairments: history of heart impairment which required surgery as an infant, chronic obstructive pulmonary

(09CV1649)

disease, degenerative disc disease of the lumbar spine, dysthymia, anxiety, a personality disorder, and borderline intellectual functioning, he does not have an impairment or combination of impairments that meets, or medically equals the Listings.  (Tr. 18-19.)

After reviewing the administrative record as a whole, including the medical records, relevant testimony, and the legal standards applied, the Court finds that the ALJ's decision is based upon appropriate legal standards and supported by substantial evidence.

## II.  Procedural History

Fisher filed an application for benefits on November 15, 2004, alleging a disability due to learning difficulties and attention deficit disorder.  ECF No. 12 at 2.  The Agency initially denied Fisher's claim, and again upon reconsideration.  ECF No. 12 at 2.  On August 16, 2005, Fisher requested an administrative hearing before the ALJ which was held on October 11, 2007 in Pittsburgh, Pennsylvania.  Fisher, his attorney, and a vocational expert were present.

The ALJ issued a decision denying benefits on November 27, 2007.  (Tr. 16 - 26.)  Fisher requested a review of the ALJ's decision which the Appeals Council denied making the ALJ's decision the final decision of the Agency.  Seeking a review of the Agency's final decision denying him benefits, Fisher timely filed a Complaint with this Court asserting the following issue:

> Whether Plaintiff, Jason Fisher's applications for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income were improperly denied?

## III.  Law and Analysis

2

(09CV1649)

### A. Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court had decided the matter differently, and even if substantial evidence also supported a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at

(09CV1649)

681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Standard for Establishing Disability

To establish disability under the Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if he has an impairment that meets the listing and the duration requirement. Before considering the fourth

(09CV1649)

step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work.  The claimant bears the burden of proof at steps one through four.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and her age, education, and work experience to determine whether the claimant may work.  Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  Significantly, he bears the burden of proving disability up to Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step

5

(09CV1649)

five, which determines whether the claimant is able to perform work available in the national economy"). The burden of proof regarding the establishment of disability onset date also lies with the claimant. *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. 20 C.F.R. § 404.1512(c).

### C. The ALJ's Written Decision is Supported by Substantial Evidence

#### 1. Weight Assigned Medical Evidence, Generally

The Agency promises claimants that ALJs "will evaluate every medical opinion [they] receive." 20 C.F.R. § 404.1527(d). Yet, it also recognizes that not all medical sources need be treated equally, classifying acceptable medical sources into three types: nonexamining sources, non-treating (but examining) sources, and treating sources. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). A "nonexamining source" is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." *Id.*; 20 C.F.R. § 404.1502. A "nontreating source" (but examining source) has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" her. *Smith*, 482 F.3d at 875. A treating source, accorded the most deference by the Agency, has not only examined the claimant but also has an "ongoing treatment relationship" with the claimant consistent with accepted medical practice. *Id.* A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted

6

(09CV1649)

medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition." *Id.*

When evaluating medical opinions, the Agency will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(1). The Agency will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ." *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(2). Evidence from non-examining sources is also considered opinion evidence. 20 C.F.R. § 404.1527(f).[1]

Treating physicians or psychologists opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p. When the treating physician's opinion is not given controlling weight, the ALJ must weigh the treating source's opinion using the following factors: "the length of the treatment relationship and frequency of examination, the

---

[1] The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 404.1527(f)(2)(ii). In this case, the ALJ appropriately observed this regulation.

(09CV1649)

nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source" in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (*discussing* 20 C.F.R. § 404.1527(d)).

The Agency is tasked to ". . . always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (*quoting* 20 C.F.R. § 404.1527(d)(2)).[2]  "This reasons-giving requirement exists only for 20 C.F.R. § 404.1527(d)(2), and not for the remainder of for 20 C.F.R. § 404.1527(d) ." The Agency requires ALJ's to give reasons for not fully crediting a treating physician's opinion in order to help claimants to understand "why the administrative bureaucracy deems them not disabled when physicians are telling them that they are" disabled.[3] *Smith*, 482 F.3d at 876.

Fisher challenges the weight given the medical opinions of Drs. Pecar and Shaw-Nieves. There is no dispute that Dr. Pecar is a treating physician.  Although the ALJ relied upon the findings of Dr. Shaw-Nieves, he did not label her a treating physician.

The Court's review of the record does not support Fisher's concern regarding the ALJ's treatment of the medical opinions of Drs. Pecar and Shaw-Nieves.  The ALJ appropriately considered the opinions of Dr. Pecar in accordance with the treating physician rule and articulated his reasons for giving little weight to those opinions.  While the ALJ also considered

---

[2] This requirement ensures "the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *See Wilson*, 378 F.3d at 544

[3] In addition, the reasons-giving requirement "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed his disabled and therefore might be especially bewildered when told by an administrative bureaucracy to that he [sic] is not, unless some reason for the agency decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)).

8

(09CV1649)

the opinions of Dr. Shaw-Nieves, he appropriately (1) did not grant her treating physician status and (2) explained his partial reliance upon her findings in concluding that Fisher is not disabled.

### 2. The ALJ Properly Articulated the Weight Given Dr. Pecar's Opinions

There seems to be no disagreement among the parties that Dr. Pecar is a treating physician.  The issue is whether the ALJ gave Dr. Pecar's opinions the requisite " weight" pursuant to the treating physician rule and whether the ALJ rejected Dr. Pecar's opinions in favor of a non-examining physician**.**  As explained below, the ALJ accorded Dr. Pecar's opinions the deference required by the treating physician rule.

#### a. The ALJ Did Not "absolutely disregard" Dr. Pecar's Opinions

Fisher incorrectly argues that the ALJ "absolutely disregarded" the opinions of Dr. Pecar and that the ALJ "did not address the fact that Dr. Pecar's opinion may be entitled to less than controlling weight."  ECF No. 12 at 14-15; ECF No. 14 at 3**.**  At the threshold, in accordance with the regulations, the ALJ recognized Dr. Pecar as a treating physician and considered his opinions.  (Tr. 24.)  After evaluating Dr. Pecar's opinions and supporting evidence, the ALJ found that Dr. Pecar's opinions were not substantiated by Dr. Pecar's "own clinical findings as well as other evidence in the medical record."  (Tr. 24.)   The ALJ then, appropriately, discounted Dr. Pecar's findings and articulated his reasons for doing so, *i.e.* for assigning Dr. Pecar's opinions less than controlling weight.  (Tr. 24.)  The ALJ (who also found that Fisher had disabling limitations) recognized that Dr. Pecar's opinions  – that Fisher's limitations rendered him totally disabled – should be given some, but not controlling weight.  *See* SSR 96-2p, 1996 WL 374188, at *4 ("[A] finding that a treating source medical opinion . . . is

9

(09CV1649)

inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."). In making his findings, the ALJ explained that he considered "all symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence and other evidence . . . " and also ". . . the opinion evidence in accordance with 20 CFR 416.927, SSR 96-2p, 96-5p and 96-3p." (Tr. 21.)  The ALJ committed no error by articulating his findings in terms slightly different than those found in the regulations.  His written decision, including its references to 20 C.F.R. 416.927, leaves no doubt that he acted in accordance with the treating physician rule.

Fisher's contention that the opinions of Dr. Pecar should have been given controlling weight merely because Dr. Pecar was his treating physician lack merit.  Specifically, Fisher argues that a treating physician's opinion is entitled to substantially greater weight than that of a physician who has not treated or examined Fisher and that contrary testimony of a non-examining physician is not enough justification to reject a treating physician's opinion.  ECF No. 12 at 14-15.  Legal authority does not require an ALJ to grant controlling weight to a treating physician's opinion that is contradicted by other evidence in the record or is otherwise not well supported.

The ALJ's written decision appropriately detailed the deficiencies in Dr. Pecar's opinion and explained why he refused to give Dr. Pecar's opinions controlling weight.  The ALJ found the following:

> I recognize that Dr. Pecar, a treating physician, has placed limitations of the claimant's ability to sit, walk, bend, lift, and follow instructions, and that he completed an assessment for the Ohio Department of Job and Family Services in April 2005 indicating that the claimant basically cannot sit, stand, walk, lift and carry

10

(09CV1649)

> objects, or do various other work activities (Exhibit 6F/11). However, I am not bound to accept Dr. Pecar's opinions if they are not substantiated by his own clinical findings as well as the other evidence in the medical record. I find little in the physician's office records (Exhibit 6F and 13F) which would support such a limited assessment of the claimant's work ability. However, the results of various diagnostic studies as well as examinations in the record do not support totally disabling limitations, either physical or mental.

(Tr. 24.)

An ALJ is not bound by the conclusory statements of doctors, including those of treating physicians. This is particularly true when the treating physician's opinions are unsupported by sufficient clinical or diagnostic findings and inconsistent with other reliable evidence. *See King v. Heckler*, 742 F.2d 973 (6th Cir. 1984). The ALJ properly considered the opinions of Dr. Pecar and appropriately articulated his reasons for not giving Dr. Pecar's opinions controlling or even great weight.

Fisher's criticism of the ALJ's articulation of the weight given Dr. Pecar's opinion does not warrant reversal or remand. The regulations do not require a formulaic recitation of the reasons for granting a treating physician's opinion less than controlling weight. As detailed above, the ALJ acknowledged Dr. Pecar's assessments and explained that he found them not "substantiated" by Dr. Pecar's "own clinical findings." By explicitly referring to Dr. Pecar as "a treating physician," the ALJ acknowledged the application of the *Wilson* factors and provided sufficient information to permit judicial review of his assessment of Dr. Pecar's opinions.[4] The

---

[4] These factors include: "the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source" in determining what weight to give the opinion." *Wilson,* 378 F.3d at 544 (discussing 20 C.F.R. § 404.1527(d)).

11

(09CV1649)

ALJ has committed no error in these regards.

### 3. The ALJ's Failure to Classify Dr. Shaw-Nieves as a Treating Physician is not Error

"A physician is a treating source if he [or she] has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant . . . 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)].'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1502). "A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" 20 C.F.R. § 404.1502.

The ALJ's written decision clearly reflects that he relied upon Dr. Shaw-Nieves' assessments.[5] That the ALJ's written decision, does not, however, explicitly state whether the ALJ considered Dr. Shaw-Nieves an examining, consulting, or treating physician, does not dictate reversal or remand.

First, as stated above, the strict "reasons-giving requirement" exists only for opinions issued by treating sources. *Compare* § 404.1527(d)(2) with the remainder of § 404.1527(d). Medical source opinions about the ultimate issue of disability are not entitled to *any* particular weight.[6] 20 C.F.R. §§ 404.1527(e), 416.927(e). The ultimate decision of disability rests with

---

[5] The ALJ's decision notes the mental health treatment and evaluations Fisher received at the Community Health facility with which Dr. Shaw-Nieves was associated. (Tr. 22, 23.)

[6] The regulations do, however, require ALJs to weigh non-treating medical source opinions under the same factors applicable to treating medical sources, including: (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, consistency of the opinion with the

12

(09CV1649)

the ALJ. *Walker v. Secretary of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992); 20 C.F.R. § 404.1527, §416.927.

Second, based on the record, Dr. Shaw-Nieves was not a treating physician. The ALJ, therefore, was not held to the heightened standard of "reasons-giving" reserved for treating sources. Rather, Dr. Shaw-Nieves' opinions regarding Fisher's disability status were not entitled to any particular weight. In *Wilson*, the Sixth Circuit explained that Agency regulations require an ALJ to give more weight to the opinions of treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations

*Wilson*, 378 F.3d at 544. The regulations make it clear that claimants are entitled to receive good reasons for the weight assigned a treating physician separate and apart from their substantive right to receive disability benefits. *Id*. at 547. Because this reasons-giving requirement exists only for treating physicians, the physician whose opinion is at issue must first be classified as a treating physician. Dr. Shaw-Nieves does not qualify as a treating physician.

The evidence, including Fisher's testimony, shows that Dr. Shaw-Nieves examined Fisher only once. (Tr. 579, 356, 358.) Based upon the notes from that one visit, wherein the doctor admitted that she was evaluating Fisher for the first time, she candidly opined, "I will not

---

record as a whole and (4) specialization. *See Davenport v. Astrue*, No. 3:06CV402, 2008 WL 641131 at *6 (S.D.Ohio Mar. 4, 2008); *Kester v. Astrue*, No. 3:07cv00423, 2009 WL 275438 at *10 (S.D.Ohio Feb. 3, 2009); *see also* 20 C.F.R. § 404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...").

13

(09CV1649)

and can not with good conscious [sic] say that this man is perm[a]nently disabled without more contact with him or seeing him given proper treatment, social and financial support to improve himself."[7]  (Tr. 358.)   While "[a] physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition,'" Fisher's health issues do not present a condition permitting such infrequent contact with his treating physician.  *Smith,* 482 F.3d at 876  (holding that two physicians who had each seen the claimant on just one occasion for treatment purposes were not "treating physicians").

Dr. Shaw-Nieves' own words fail to evince the type of ongoing treatment relationship contemplated by the plain language of the treating physician regulation.  She qualifies her findings due to her infrequent (one-time only) contact with Fisher.  Dr. Shaw-Nieves' words are the antithesis of a medical professional able to provide a detailed longitudinal picture of the effects of Fisher's impairments on his ability to work.  Accordingly, the ALJ was justified in not assigning Dr. Shaw-Nieves the status of treating physician.[8]

While not specifically describing the nature of  Dr. Shaw-Nieves' medical representation, the ALJ's written decision distinctly shows that the ALJ relied upon Dr. Shaw-Nieves'

---

[7] This opinion supports the ALJ's finding that Fisher is not disabled.  Up to this point, the opinion of Dr Shaw-Nieves bolsters rather than contradicts the ALJ's.  Dr. Shaw- Nieves' concluding supplemental statement that Fisher "is unable to work a routine 8 hour[-]day due to both his physical and mental ailments for at least 12 months or more without help" is contradicted by substantial evidence in the record, including Dr. Shaw-Nieves' contemporaneous statement quoted above. (Tr. 358.)

[8] After learning that Fisher had only been seen at Community Health Services for a limited time and the last visit (Dr. Shaw-Nieves') was just days before the hearing, the ALJ invited Fisher's counsel to submit any additional reports that he would like considered, if they presented a different "appraisal" than those already in the record.  (Tr. 580, 611.)  Fisher's attorney agreed that additional reports would not give a different appraisal.  (Tr. 611.)

14

(09CV1649)

assessments as one of the medical sources at the Community Mental Health Services facility which provided treatment to Fisher. (Tr. 19, 22, and 23 (referring to Exhibits 12F and 14F).) Based upon the record, especially the infrequency of her contact with Fisher and her own admission that this infrequent contact left her unable to ethically opine about his prospects for long-term disability, it is clear that Dr. Shaw-Nieves was not a treating physician. In the absence of treating physician status for Dr. Shaw-Nieves, it is not necessary to reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting Dr. Shaw-Nieves' opinion of disability for at least 12 months or more.

### IV. Recommendation and Conclusion

The record contains substantial evidence that Fisher has sufficient mental and physical function to perform the limited work the ALJ found he could perform. The undersigned finds that the ALJ's findings are supported by substantial evidence, derived at using appropriate legal standards and, as such, cannot be set aside under 42 U.S.C. § 405(g). The Court recommends that the Agency's final decision denying benefits to Jason M. Fisher be affirmed in its entirety and that the referral to the undersigned be terminated.

Dated: June 10, 2010          */s/ Benita Y. Pearson*
                                United States Magistrate Judge

### NOTICE

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).