UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

JASON M. FISHER : CASE NO. 5:09-CV-01649
:
    Plaintiff, : JUDGE JAMES S. GWIN
:
vs. : OPINION AND ORDER
: [Resolving Doc. 15 & 16]
MICHAEL ASTRUE, Commissioner of :
Social Security :
:
    Defendant. :
:

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Claimant Jason M. Fisher objects to the Magistrate Judge's Report and Recommendation affirming the Administrative Law Judge's ("ALJ") decision denying him social security benefits. [Docs. 15; 16.] The Claimant moves this Court to reject the Report and Recommendation, reverse the ALJ's decision, and either find that the Claimant deserves disability benefits or remand the case for further hearing. For the reasons stated below, this Court **OVERRULES** the Claimant's Objections, **ADOPTS** the Recommendation of the Magistrate Judge, and **AFFIRMS** the Administrative Law Judge's decision.

**I. Background**

Claimant Fisher brings this civil action against the Commissioner of Social Security, seeking review of the ALJ's decision denying him disability benefits. [Doc. 1.] In contesting the ALJ's and Magistrate Judge's opinions, the Claimant says that the ALJ failed to give the appropriate weight to

Case No. 5:09-cv-01649
Gwin, J.

his treating physician Dr. Pecar's opinions and did not properly articulate his reasons for not affording Dr. Pecar's opinions at least substantial weight. [Doc. 16 at 2-3.]

Claimant Fisher was 29 years old at the time of his hearing before Administrative Law Judge Elliott Bunce. [Doc. 12 at 3.] He finished the twelfth grade and has a "high school education." [Doc. 12 at 3.] Between 1995 and 2004, the Claimant held jobs as a grocery store service clerk, a convenience store stocker, a dishwasher, a gas station attendant, a fast food cook, a car washer, and a grocery bagger. [Doc. 12 at 3.]

On November 15, 2004, the Claimant filed an application for disability benefits. [Doc. 12 at 2.] In his application, Fisher claimed that he was disabled due to learning difficulties and attention deficit disorder. [Doc. 12 at 2.] The Agency denied his application both initially and upon reconsideration. [Doc. 12 at 2.] On August 16, 2005, the Claimant requested a hearing on his application.

ALJ Bunce conducted a hearing on October 11, 2007. The Claimant and an impartial vocational expert testified at the hearing. [Tr. 16.] Following the hearing, the ALJ issued a decision affirming the Administration's denial of benefits. The ALJ found that the Claimant had several severe impairments: history of heart impairment which required surgery as an infant, chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, dysthymia, anxiety, personality disorder, and borderline intellectual functioning. [Tr. 18-19.] However, the ALJ also found that the Claimant does not have an impairment or combination of impairments that meets or medically equals the Listings and that a significant number of jobs in the economy accommodate the Claimant's residual functional capacity and vocational profile. [Tr. 18-19, 24.] The ALJ made this finding despite the contrary opinion of the Claimant's treating physician, Dr. Pecar, that the Claimant

Case No. 5:09-cv-01649
Gwin, J.

is unemployable. [Tr. 271.] The Claimant requested a review of the ALJ's decision, but the Appeals Council denied this request making the ALJ decision the Agency's final decision.

On July 17, 2009, Claimant Fisher brought this civil action against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the ALJ's decision denying him disability benefits. [Doc. 1.] Initially, the Claimant argued that the ALJ erred in failing to give proper weight to the opinions of two physicians. [Docs. 12, 14.] On June 10, 2010, Magistrate Judge Benita Y. Pearson issued a Report and Recommendation, recommending that this Court affirm the ALJ's decision denying the Claimant benefits. [Doc. 15.]

On June 21, 2010, Claimant Fisher filed his Objection to the Report and Recommendation. [Doc. 16.] In his Objection, the Claimant says that (1) the ALJ gave too little weight to the treating physician's opinion, and (2) the ALJ failed to fully articulate his reasons for rejecting Dr. Pecar's opinions. [Doc. 16] The Claimant does not object to the Magistrate Judge's finding that Dr. Shaw-Nieves was not a treating physician and that therefore the ALJ did not need to provide an explanation for why he decided what weight to assign to Dr. Shaw-Nieves's opinions. [Docs. 15, 16.] Accordingly, the Court does not address this finding.

**II. Legal Standard**

*II.A  Standard for Establishing Disability*

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other

Case No. 5:09-cv-01649
Gwin, J.

work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a).

At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if she or he does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if she or he has an impairment that meets the listing and the duration requirement.

Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work. At the final step, Step Five, the ALJ considers the claimant's RFC and her or his age, education, and work experience to determine whether the claimant may work. Even if the claimant's impairment does prevent the claimant from doing past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also*

Case No. 5:09-cv-01649
Gwin, J.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The claimant bears the ultimate burden of proof on the issue of disability. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability."). The burden of proof regarding the establishment of disability onset date also lies with the claimant. *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006). Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. 20 C.F.R. § 404.1512(c).

At Step Five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

II.B.   *Substantial Evidence Review*

The Federal Magistrates Act requires a district court to conduct *de novo* review of the claimant's objections to a report and recommendation. 28 U.S.C. § 636(b)(1). Both the Magistrate and this Court's review is limited to determining whether the ALJ's decision is "supported by

Case No. 5:09-cv-01649
Gwin, J.

substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Put differently, it is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996). When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would arrive at a different conclusion than the ALJ. *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). This Court may not review "the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984).

Nevertheless, even where "substantial evidence otherwise supports the decision of the Commissioner, . . . reversal is required [if] the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

III. C.  *Weight Given to Treating Physician's Opinion*

An ALJ must give a treating physician's opinion "conclusive weight" when the testimony is well-supported and is not inconsistent with other substantial evidence. *Bogle v. Sullivan,* 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(2). When the ALJ does not give the treating physician's opinion controlling weight, the ALJ still generally affords the treating physician's opinion "more weight." 20 C.F.R. § 404.1527(d)(2). The ALJ can adjust this "more weight" presumption, in light of the length of the treatment relationship, the frequency of examination, the

-6-

Case No. 5:09-cv-01649
Gwin, J.

nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the rest of the record, and the specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2)(i) - (d)(2)(ii), (d)(3) - (d)(6). The Agency must "always give good reasons in [their] notice of determination of decision for the weight [they] give [the claimant's] treating source's opinion." *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (discussing 20 C.F.R. § 404.1527(d)(2)). However, the ALJ need not give deference to a treating physician's conclusory statement that a claimant is disabled. *See Schuler v. Commissioner*, 109 Fed. Appx. 97, 101 (6th Cir. 2004).

### III. Analysis

The focus of the Claimant's challenge to the ALJ's decision is the weight the ALJ gave to treating physician Dr. Pecar's opinion. The Claimant says that the ALJ "should have given a more thorough articulation of his reasons for his rejection of Dr. Pecar's opinions." [Doc. 16 at 4.] To answer this challenge, this Court will detail Dr. Pecar's opinion and the countervailing evidence the ALJ considered.

Dr. Pecar treated the Claimant a number of times over a period of years. [Doc. 12 at 6.] Although both parties agree that he is a treating source, his opinion is nevertheless not entitled to controlling weight, because other sources' opinions in the record contradict his opinion. [Docs. 12; 13.] The Claimant alleges that Dr. Pecar's opinion deserves more weight than it received.

The ALJ rejected the information that Dr. Pecar provided in the Ohio Department of Job and Family Services Basic Medical form. [Tr. 24.] In that form, Dr. Pecar opined that because of the Claimant's physical impairments, the Claimant can only stand or walk one hour in an eight-hour workday and only a half hour without interruption. Dr. Pecar also gave the opinion that the Claimant

-7-

Case No. 5:09-cv-01649
Gwin, J.

can only sit one hour in an eight-hour workday and only a half hour without interruption. Dr. Pecar said that the Claimant's physical functional capacity also affected his ability to lift and carry. He noted that the Claimant's ability to push, pull, or bend is markedly limited; his ability to reach or speak is moderately limited; his ability to handle or perform repetitive foot motions is not significantly limited; and his sight and hearing are not limited. Finally, Dr. Pecar concluded that the Claimant is unemployable. [Tr. 271.]

The ALJ considered some of Dr. Pecar's opinions but rejected Pecar's conclusions that were unsupported by Dr. Pecar's own clinical findings and other physicians' medical evaluations. [Tr. 24] In declining to give the treating source's opinion more weight than the non-treating sources' opinions, the ALJ noted that Dr. Pecar's clinical findings did not support his opinion. The ALJ concluded that because he is not bound to accept such conclusory findings when the physician does not adequately support those conclusions, he did not need to accept Dr. Pecar's assertions of the Claimant's totally disabling physical or mental limitations. [Tr. 24.]

Other evidence and testimony undercut and contradicted Dr. Pecar's opinion. As the ALJ aptly noted, both the Claimant's own testimony and Exhibit 3E suggested that the Claimant had been adequately functioning to the point where he could care for his young children, maintain a satisfactory relationship with his girlfriend, assist with household chores, and care for his personal needs. [Tr. 24.] The ALJ also mentioned that the Claimant testified that he had difficulty sitting for more than twenty minutes but had tolerated sitting through his hearing which lasted over an hour. [Tr. 24.]

Furthermore, the ALJ noted the opinions of other physicians which are at odds with the opinions of Dr. Pecar. [Tr. 22-24.] The ALJ said that the while the Claimant's chronic pulmonary

Case No. 5:09-cv-01649
Gwin, J.

disease does limit him physically, it does not do so severely and the condition is relatively stable. [Tr. 22.]  The ALJ explained that Dr. Pecar's studies disclosed moderate impairment (Exhibit 6F), but Dr. Sanchez, a respiratory specialist, provided an opinion that the Claimant showed no signs of severe pulmonary complications (Exhibit 5F).  [Tr. 22.]  Furthermore, even Dr. Pecar did not indicate "debilitating manifestations of a respiratory condition" in his reports.  [Tr. 22.] Additionally, neither Dr. Pecar's nor Dr. Janez's opinions "detail a severe loss of range of motion in the [C]laimant's lumbar region or lower extremities, or persistent muscle spasm, or neurological loss (Exhibits 6F and 13F)" that would support Dr. Pecar's conclusions.  [Tr. 23.]  Dr. Derrow's evaluation said that the Claimant is able to lift fifty pounds occasionally, twenty-five pounds frequently, stand or walk for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and push or pull with unlimited capacity.  [Tr. 292.]  Dr. Derrow supported his assertions with the Claimant's results from lung function testing and cardiac testing. [Tr. 292.]

With respect to the Claimant's mental impairments, the ALJ explains that the record establishes that the Claimant has several psychiatric conditions, cognitive limitations, and probable borderline intellectual functioning, but these conditions do "not preclude the performance of simple, routine low stress work."  [Tr. 23.]  The ALJ noted that according to Dr. Bosquet's evaluations, the Claimant lacked cooperation, interest, and motivation in participating in the psychological and IQ testing (Exhibit 2F). [Tr. 23]  Dr. Bosquet also wrote that the Claimant's "speech was 100% understandable." [Tr. 191]  He concluded that the Claimant was malingering and only mildly to moderately limited in all aspects of psychological functioning. [Tr. 23.]

The Community Health Services evaluation corroborated this evaluation by concluding that

Case No. 5:09-cv-01649
Gwin, J.

the Claimant maintained good eye contact, "did not display a severe impairment in his ability to concentrate or calculate," had a satisfactory memory, and was a good father (Exhibit 12F and 14F). [Tr. 23.] The examining psychologist from the Community Health Services facility said that the Claimant was moderately limited with respect to social functioning, concentration, and task persistence and had marked impairment in his ability to follow detailed instructions and work with less supervision (Exhibit 12).

The ALJ credited some of Dr. Pecar's opinions by taking the Claimant's impairments into account, but the ALJ explained that the clinical findings discussed above did not support Dr. Pecar's opinion placing great limitations on the Claimant's ability work (Exhibit 6F). [Tr. 24.] The ALJ considered the supported limitations in determining the Claimant's residual functional capacity but ultimately rejected Dr. Pecar's pronouncement that the Claimant is unemployable. [Tr. 23.] After laying out the above reasons for giving little weight to Dr. Pecar's opinion, the ALJ held that the Claimant was not under a disability, as defined in the Social Security Act, because considering the Claimant's age, education, work experience, and residual functional capacity, he can perform some jobs that exist in significant numbers in the national economy. [Tr. 24.] The ALJ concluded that the Claimant

> has the residual functional capacity to perform work that does not require: exertion above the light level; or more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; or exposure to poor ventilation or extremes of dust, humidity, or temperature; or more simple, routine, repetitive tasks, with one or two step instructions; or strict productions quotas, defined as the requirement to produce a specified number or units of work in a specified period of time; or more than occasional contact with the public or coworkers.

[Tr. 21.] The ALJ listed the following examples of such jobs: a bagger, a stamp pad finisher, a leaf tier, and a waxer. [Tr. 25.]

Case No. 5:09-cv-01649
Gwin, J.

In this case, the ALJ's decision is supported by substantial evidence and substantial evidence supports the ALJ's treatment of Dr. Pecar's opinion. The ALJ found that Dr. Pecar's opinion was not supported by Dr. Pecar's own clinical findings. Dr. Pecar's notes contained little support for his ultimate opinion. The ALJ, therefore, reasonably concluded that Dr. Pecar's opinion was not well-supported. As described above, the ALJ based his opinion on substantial evidence that a reasonable mind might accept as adequate to support his conclusion.

Furthermore, the ALJ fully articulated his reasons for assigning little weight to Dr. Pecar's opinions. The ALJ rejected Dr. Pecar's opinion that the Claimant's mental impairments would preclude him from engaging in full time employment. [Tr. 16-26.] The ALJ did this without explicit mention of the "more weight" factors listed in 20 C.F.R. § 404.1527. However, while he did not explicitly list the factors, the ALJ appropriately focused on supportability and consistency in determining what weight to give to Dr. Pecar's opinion. The ALJ reasonably rejected Dr. Pecar's conclusion based upon the ample evidence to the contrary in the record.

This Court holds that a reasonable mind could have found the relevant evidence adequate to support the conclusions that, (1) the treating physician's opinion was not "well-supported," and (2) the treating physician's opinion was inconsistent with other substantial evidence. Accordingly, this Court holds that the ALJ did not err in giving little weight to the treating physician's opinion.

For the reasons noted above, the Court holds that substantial evidence supports the ALJ's conclusion that the Claimant does not qualify for benefits under the statute.

### IV. Conclusion

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and

Case No. 5:09-cv-01649
Gwin, J.

Recommendation and **AFFIRMS** the decision of the ALJ.

    IT IS SO ORDERED.


Dated: August 2, 2010　　　　　　　　　　　s/　　　*James S. Gwin*
　　　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE